IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

NIKOLAI VIDINLIEV
on behalf of themselves and all others
similarly situated, et al.,

    Plaintiffs,

      v.

CAREY INTERNATIONAL, INC.
et al.,

    Defendants.

CIVIL ACTION FILE
NO. 1:07-CV-762-TWT

ORDER

This is a Fair Labor Standards Act case. It is before the Court on the Plaintiffs'

Motion for Partial Summary Judgment [Doc. 90] and the Defendants' Cross Motion

for Partial Summary Judgment [Doc. 113]. For the reasons below, the Plaintiffs'

Motion is DENIED and the Defendants' motion is GRANTED IN PART and

DENIED IN PART.

I. Background

The Plaintiffs are current and former limousine drivers for the Defendants

Executive Limousine Transportation, Inc., and Aaron's Limousine Service, Inc.

(collectively "Carey Atlanta"). Carey Atlanta provides chauffeured transportation

services out of Atlanta, Georgia, under a franchise agreement with the Defendant Carey International, Inc. ("Carey International"). Carey International advertises itself as "the world's premier chauffeured services company, offering the widest range of chauffeured ground transportation for personal travel, business travel, road shows, meetings and events, private aviation, luxury hotels and more." <u>See</u> Carey International, Inc., Corporate Brochure, http://www.carey.com/eCarey/brochures/CareyCorporateBrochure.pdf (last visited August 29, 2008).

While working for Carey Atlanta, the Plaintiffs often worked more than 40 hours per workweek but were not paid time and one-half for overtime. The Plaintiffs argue that by failing to pay overtime, the Defendants violated the Fair Labor Standards Act. 29 U.S.C. § 207(a)(1). The Defendants admit that the Plaintiffs were not paid overtime. Instead, the Defendants rely upon the affirmative defense that Carey Atlanta is a "motor carrier" and is exempt from the overtime pay requirement of the Fair Labor Standards Act. 29 U.S.C. § 213(b)(1). Both sides request partial summary judgment on this issue. The Plaintiffs move for partial summary judgment that the Defendants do not qualify for the motor carrier exemption after August 10,

2005.  The Defendants move for partial summary judgment that the Defendants qualify for the motor carrier exemption during all relevant periods.[1]

## II.  <u>Summary Judgment Standard</u>

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The court should view the evidence and any inferences that may be drawn in the light most favorable to the nonmovant.  <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144, 158-59 (1970).  The party seeking summary judgment must first identify grounds that show the absence of a genuine issue of material fact.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323-24 (1986).  The burden then shifts to the nonmovant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact does exist.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 257 (1986).

## III.  <u>Discussion</u>

---

[1]For the limited purpose of these cross-motions, the Defendants consider the Plaintiffs as employees.  For all other purposes, the Defendants argue that the Plaintiffs are independent contractors not covered by the Fair Labor Standards Act.

A.  Claims Before August 10, 2005

The Fair Labor Standards Act provides that any employee who is engaged in commerce or in the production of goods for commerce shall be paid a minimum of "one and one-half times the regular rate at which he is employed for every hour over forty hours he works in a workweek."  29 U.S.C. § 207(a)(1).  But, under the motor carrier exemption, the overtime pay requirement does not apply to "any employee with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours of service pursuant to the provisions of section 204 of the Motor Carrier Act [of] 1935."  29 U.S.C. § 213(b)(1).  To figure out precisely which employees are subject to the jurisdiction of the Secretary of Transportation, and therefore exempt from the overtime pay requirement, requires a closer look at the Motor Carrier Act of 1935.[2]

The Motor Carrier Act provides that the Secretary of Transportation may regulate the "qualifications and maximum hours of service of employees . . . of a *motor carrier*."  49 U.S.C. § 31502(b)(1) (emphasis added).  However, this specific

---

[2]The motor carrier exemption is not part of the Motor Carrier Act.  The Motor Carrier Act is only relevant because the scope of the motor carrier exemption is defined by the jurisdiction that the Secretary of Transportation can assert under the Motor Carrier Act.

grant of jurisdiction is also qualified by the Motor Carrier Act's general limitation on jurisdiction which is limited to:

> [T]ransportation by a motor carrier and the procurement of that transportation, to the extent that passengers, property, or both, are transported by motor carrier--(1) between a place in--(A) a State and a place in another State; (B) a State and another place in the same State through another State; (C) the United States and a place in a territory or possession of the United States to the extent the transportation is in the United States; (D) the United States and another place in the United States through a foreign country to the extent the transportation is in the United States; or (E) the United States and a place in a foreign country to the extent the transportation is in the United States; and (2) in a reservation under the exclusive jurisdiction of the United States or on a public highway.

49 U.S.C. § 13501.

Under the Motor Carrier Act, "motor carrier" and "motor private carrier" have "the same meanings given those terms in section 13102 of this title." 49 U.S.C. § 31501. The phrase "section 13102 of this title" is a reference to 49 U.S.C. § 13102 and that section defines motor carrier as a "person providing motor vehicle transportation for compensation." 49 U.S.C. § 13102. Although the Motor Carrier Act does not define "employee," the Supreme Court has held that "the meaning of employees in [49 U.S.C. § 31502(b)(1)] is limited to those employees whose activities affect the safety of operation." *United States v. American Trucking Ass'ns*, 310 U.S. 534, 553 (1940).

Based on its interpretation of this language, the Department of Labor has issued regulations defining the scope of the motor carrier exemption. "The exemption of an employee . . . depends both on the class to which his employer belongs and on the class of work involved in the employee's job." 29 C.F.R. § 782.2(a). The exemption:

> [E]xtends to those classes of employees and only those who: (1) Are employed by carriers whose transportation of passengers or property by motor vehicle is subject to [the Secretary of Transportation's] jurisdiction under section 204 of the Motor Carrier Act [49 U.S.C. § 31502], and (2) engage in activities of a character directly affecting the safety of operation of motor vehicles in the transportation on the public highways of passengers or property in interstate or foreign commerce within the meaning of the Motor Carrier Act.

*Id.* (citations omitted). In *Baez v. Wells Fargo Armored Serv. Corp.*, 938 F.2d 180 (11th Cir. 1991), the Eleventh Circuit has adopted this two-part test, and so this Court does the same.

The Defendants bear the burden of demonstrating that they meet the two-part test. *Cf. Jeffery v. Sarasota White Sox*, 64 F.3d 590, 594 (11th Cir. 1995) ("The employer has the burden of showing that it is entitled to the exemption."). The Defendants easily meet the first part of the test. This part looks to the "class to which his employer belongs." 29 C.F.R. § 782.2(a). The Defendants must show that Carey Atlanta is a carrier "whose transportation of passengers or property by motor vehicle is subject to [the Secretary of Transportation's] jurisdiction under § 204 of the Motor Carrier Act [49 U.S.C. § 31502]." *Id.* Evidence that a carrier has a permit or license

from the Department of Transportation is sufficient to prove jurisdiction. *See Baez*, 938 F.2d at 182 ("In fact, the permit issued by the [Department of Transportation] indicates that jurisdiction has already been exercised."). The Defendants have provided that evidence. Carey Atlanta operates multiple commercial motor vehicles and "was issued a commercial [motor] vehicle identification number by the United States Department of Transportation license in 2002." (Defs.' Statement Of Material Facts For Which There Is No Genuine Issue To Be Tried ¶ 2.) The "Plaintiffs do not dispute this fact." (Pls.' Response To Defs.' Statement Of Material Facts For Which There Is No Genuine Issue To Be Tried ¶ 2.) Moreover, Carey Atlanta "holds itself out as an interstate motor carrier and advertises interstate services," which is also evidence that a carrier is subject to the Secretary of Transportation's jurisdiction. *Walters v. American Coach Lines of Miami, Inc.*, 2008 WL 2967170, *33 (S.D. Fla. 2008).

The Defendants also meet the second part of the test. This part looks to the "class of work involved in the employee's job." 29 C.F.R. § 782.2(a). The Defendants must show that the Plaintiffs belong to a class of employees who directly affect "the safety operation of motor vehicles in the transportation on the public highways of passengers or property in interstate or foreign commerce within the meaning of the Motor Carrier Act." *Id.* The Defendants have demonstrated that the

Plaintiffs affect "safety operation" by pointing out that they belong to a class of full-time limousine drivers. *See* 29 C.F.R. § 782.3(b); *Garcia v. Fleetwood Limousine, Inc.*, 511 F. Supp. 2d 1233, 1238 (M.D. Fla. 2007). The real issue is whether the Plaintiffs also belong to a class of employees involved in interstate motor vehicle transportation.

The Defendants do not have to show that every one of the Plaintiffs had actual involvement in interstate motor vehicle transportation. An entire class of employees may be "exempt even though the interstate driving of particular employees was sporadic and occasional, and in practice some drivers would not be called upon for long periods to perform any such work." 29 C.F.R. § 782.2(c)(1) (citing *Morris v. McComb*, 332 U.S. 422, 431 (1947)). Instead, to exempt a plaintiff from the overtime pay requirement, the defendant must show that (a) some of its drivers were involved–by evidence of actual or solicited trips–in interstate motor vehicle transportation,[3] (b) the involvement with interstate motor vehicle transportation was no more than four months prior to the pay period at issue ("four-month rule"), and (c) the plaintiff did make, or could have reasonably have been expected to make, one of those interstate trips. *See Reich v. American Driver Serv.*, 33 F.3d 1153, 1156 (9th

---

[3]The phrase "some of its drivers" refers to all of Carey Atlanta's drivers, not just the ones that are Plaintiffs in this case.

Cir. 1994); *Morrison v. Quality Transports Servs., Inc.*, 474 F. Supp. 2d 1303, 1310

(S.D. Fla. 2007); U.S. Department of Labor, *Fact Sheet #19: The Motor Carrier*

*Exemption under the Fair Labor Standards Act (FLSA)*, July 2008,

http://www.dol.gov/esa/whd/regs/compliance/whdfs19.pdf.

The Defendants have made the required showing of interstate motor vehicle

transportation. Carey Atlanta's drivers made 238 interstate trips during the three years

relevant to this lawsuit. (Defs.' Statement Of Material Facts For Which There Is No

Genuine Issue To Be Tried ¶ 6.) The "Plaintiffs do not dispute this fact." (Pls.'

Response To Defs.' Statement Of Material Facts For Which There Is No Genuine

Issue To Be Tried ¶ 6.) During any four-month period across the relevant years,

Carey Atlanta's drivers made at least one interstate trip. In fact, "[s]uch out-of-state

trips occur at least once a month." (Defs.' Statement Of Material Facts For Which

There Is No Genuine Issue To Be Tried ¶ 6.) Again, the "Plaintiffs do not dispute this

fact." (Pls.' Response To Defs.' Statement Of Material Facts For Which There Is No

Genuine Issue To Be Tried ¶ 6.) Even though some the Plaintiffs did not make an

interstate trip, each of the Plaintiffs could have reasonably have been expected to

make an interstate trip.[4] The Plaintiffs admit that drivers "are required to follow

---

[4]Out of the 16 declarations submitted by the Plaintiffs, only two indicated that the driver had not made an interstate trip.

Carey International's assignment procedures, and specifically are not allowed to reject rides assigned by the Defendants' dispatch." (Second Amended Compl. ¶ 22.) "The drivers were completely dependent upon the Defendants for the assignment of work . . . . (*Id.* ¶ 32.) There is no evidence suggesting that assignment of rides was anything but indiscriminate or that any of the Plaintiffs requested to remain intrastate. *Cf. Garcia*, 511 F. Supp. 2d at 1242 (no summary judgment where the plaintiffs "could refuse assignments from the dispatcher if they wished"); *Mason v. Quality Transp. Servs.*, 2005 WL5395338, *7 (S.D. Fla. 2005) (no summary judgment where the plaintiff specifically requested and was permanently assigned a local, intrastate route).

The Plaintiffs do not genuinely dispute these facts, but instead argue for a different interstate transportation test. The Plaintiffs state that "the relevant test is whether the amount of interstate trips by Plaintiffs . . . as compared with all of the trips that the Defendants performed, qualify as *de minimus*." (Pls.' Reply Memorandum in Supp. of Their Motion for Partial Summ. J. and Pls.' Response to Defs.' Partial Mot. for Summ. J., at 14-15.) And that "[t]he Supreme Court has long held that a motor carrier must prove that at least 3-4% of its . . . 'total trips' are actually interstate trips in order for the interstate activity on its part to be more than *de minimus*." (*Id.* at 15 n.10) (citing *Morris v. McComb*, 332 U.S. 422 (1947)).

The Plaintiffs misstate the relevant law. It is true that the Defendants must show more than a *de minimus* involvement with interstate transportation. But that standard is not measured by any percentage. Instead, the Supreme Court in *Morris* stated that it is "the character of the activities *rather than the proportion* of either the employee's time or of his activities that determines the actual need for the [Secretary of Transportation's] power." *Morris*, 332 U.S. at 431 (emphasis added). And where the character is such that "interstate commerce trips [are] distributed generally throughout the year and their performance was shared indiscriminately by the drivers and was mingled with the performance of other like driving services," then the interstate trips are not *de minimus*, but "a natural, integral and apparently inseparable part of the [service of the motor carrier]." *Id.* at 433.

The Plaintiffs also request that the Defendants' Motion for Partial Summary Judgment be denied until further discovery on a number of topics. (Pls.' Reply Memorandum in Supp. of Their Motion for Partial Summ. J. and Pls.' Response to Defs.' Partial Mot. for Summ. J., at 29-30.) However, for each discovery topic requested by the Plaintiffs, the evidence is in the Plaintiffs' own personal knowledge, already in the record, or not essential information under the correct interstate transportation test. For example, the Plaintiffs state that they "can neither admit nor deny whether all of Carey Atlanta's drivers are subject to being assigned to drive

interstate routes as Plaintiffs have not yet taken Defendants' executives' (both current and former) depositions." (Pls.' Response To Defs.' Statement Of Material Facts For Which There Is No Genuine Issue To Be Tried ¶ 8.) Yet the Plaintiffs do admit that drivers "are required to follow Carey International's assignment procedures, and specifically are not allowed to reject rides assigned by the Defendants' dispatch." (Second Amended Compl. ¶ 22.) And that "the drivers were completely dependent upon the Defendants for the assignment of work . . . . (*Id.* ¶ 32.) Not a single declaration submitted by the Plaintiffs suggests that the Plaintiffs were not subject to being assigned interstate routes. To the contrary, nearly all of the declarations show that the Plaintiffs were, in fact, assigned interstate routes.

For claims before August 10, 2005, the Defendants have demonstrated that there is no genuine issue of material fact as to its affirmative defense of the motor carrier exemption and, therefore, the Defendants are entitled to partial summary judgment on that issue.

B. Claims After August 10, 2005

Before August 10, 2005, the definition of "motor carrier" was "a person providing *motor vehicle* transportation for compensation." 49 U.S.C. § 13102 (emphasis added). On August 10, 2005, that definition changed when Congress passed the Safe, Accountable, Flexible, Efficient Transportation Equity Act: A Legacy

for Users ("SAFETEA-LU"). Pub. L. No. 109-59, 119 Stat. 1144 (2005). Section 4142 of the SAFETEA-LU amended 49 U.S.C. § 13102 so that motor carrier was defined as "a person providing *commercial motor vehicle* (as defined in [49 U.S.C.] § 31132) transportation for compensation." *Id.* (emphasis added). In turn, a commercial motor vehicle was defined as:

> [A] self-propelled or towed vehicle used on the highways in interstate commerce to transport passengers or property, if the vehicle--(A) has a gross vehicle weight rating or gross vehicle weight of at least 10,001 pounds, whichever is greater; (B) is designed or used to transport more than 8 passengers (including the driver) for compensation; (C) is used in transporting material found by the Secretary of Transportation to be hazardous under section 5103 of this title [49 U.S.C. § 5103] and transported in a quantity requiring placarding under regulations prescribed by the Secretary under [49 U.S.C.] section 5103.

49 U.S.C. § 31132.

The parties in this case initially briefed the motions under the assumption that the SAFETEA-LU provided the definition of motor carrier for claims beginning on August 10, 2005. But as it turned out, Congress was not done amending the definition of motor carrier. On June 6, 2008, Congress passed the SAFETEA-LU Technical Corrections Act of 2008. Pub. L. No. 110-244, 122 Stat. 1572 (2008) ("Technical Corrections Act"). Section 305 of the Technical Corrections Act is labeled "Motor Carrier Transportation Registration" and states:

> (a) GENERAL REQUIREMENTS.--Section 31138 of title 49, United States Code, is amended– . . . . (c) DEFINITIONS RELATING TO

> MOTOR CARRIERS.--Paragraphs 6(B), (7)(B), (14), and (15) of section
> 13102 of such title are each amended by striking "commercial motor
> vehicle (as defined in section 31132)" and inserting "motor vehicle."

*Id.* In short, the Technical Corrections Act restored the definition of motor carrier to its pre-SAFETEA-LU state.

The Defendants argue that Congress meant for section 305 of the Technical Corrections Act to apply retroactively to pending cases. If that is true, then the original definition of motor carrier applies to *all* of the claims made by the Plaintiffs, even claims after August 10, 2005. As a result, the Technical Corrections Act would wipe away, after the fact, any rights that the Plaintiffs may have had to overtime pay based on the SAFETEA-LU definition of motor carrier.

Whenever a statute attaches new legal consequences to events completed before its enactment, "our traditional presumption teaches that [the statute] does not govern absent clear congressional intent favoring such a result." *Landgraf v. Usi Film Prods.*, 511 U.S. 244, 280 (1994); *Martin v. Hadix*, 527 U.S. 343, 357-358 (1999). "The standard for concluding that Congress unambiguously expressed an intent that a statute apply retroactively is demanding. 'Cases where [the Supreme Court] has found truly retroactive effect . . . have involved statutory language that was so clear that it could sustain only one interpretation.'" *Cisneros v. United States Attorney Gen.*, 381 F.3d 1277, 1280 (11th Cir. 2004) (citing *Lindh v. Murphy*, 521 U.S. 320, 328 n.4

(1997)).  The presumption against retroactivity is reinforced in this case by the

principle that exemptions to the Fair Labor Standards Act are "narrowly construed

against the employers seeking to assert them."  *Arnold v. Ben Kanowsky, Inc.*, 361

U.S. 388, 392 (1960).

Congress may have wanted section 305 of the Technical Corrections Act to

apply retroactively, but it failed to demonstrate that intent in terms so clear and so

unambiguous that "it could sustain only one interpretation."  The Defendants point to

section 121 of the Technical Corrections Act as evidence of the clear and

unambiguous intent of Congress.  Section 121 is labeled "Effective Date" and states:

> (a) IN GENERAL.--Except as otherwise provided in this Act (including
> subsection (b)), this Act and the amendments made by this Act take
> effect on the date of enactment of this Act.
> (b) EXCEPTION.(1) IN GENERAL.-- The amendments made by this
> Act (other than the amendments made by sections 101(g), 101(m)(1)(H),
> 103, 105, 109, and 201(o)) to the Safe, Accountable, Flexible, Efficient
> Transportation Equity Act: A Legacy for Users (Public Law 109-59; 119
> Stat. 1144) shall– (A) take effect as of the date of enactment of that Act;
> and (B) be treated as being included in that Act as of that date. (2)
> EFFECT OF AMENDMENTS.-- Each provision of the Safe,
> Accountable, Flexible, Efficient Transportation Equity Act: A Legacy
> for Users (Public Law 109-59; 119 Stat. 1144) (including the
> amendments made by that Act) (as in effect on the day before the date of
> enactment of this Act) that is amended by this Act (other than sections
> 101(g), 101(m)(1)(H), 103, 105, 109, and 201(o)) shall be treated as not
> being enacted.

Pub. L. No. 110-244, 122 Stat. 1572.  Stated differently, the general rule is that the

amendments take effect on June 6, 2008, the date Congress enacted the Technical

Corrections Act. But the exception is that if a provision is an amendment to the SAFETEA-LU, then it takes effect on August 10, 2005, the date Congress enacted the SAFETEA-LU. The amended language from the SAFETEA-LU is treated like it never existed.

The Defendants assume that § 305 of the Technical Corrections Act is an amendment to the SAFETEA-LU and, therefore, argue that it should apply retroactively beginning on August 10, 2005. But a close look at the statute reveals that § 305 is not actually an amendment to the SAFETEA-LU. Looking at the text of § 305, once more, it states:

> (a) GENERAL REQUIREMENTS.--Section 31138 of title 49, United States Code, is amended– . . . .
> (c) DEFINITIONS RELATING TO MOTOR CARRIERS.--Paragraphs 6(B), (7)(B), (14), and (15) of *section 13102 of such title are each amended* by striking "commercial motor vehicle (as defined in section 31132)" and inserting "motor vehicle."

Pub. L. No. 110-244, 122 Stat. 1572 (emphasis added). The phrase "section 13102 of such title" refers to 49 U.S.C. § 13102 and that section of the code was created by the ICC Termination Act of 1995. Pub. L. No. 104-88, 109 Stat. 803, 854 (1995) ("ICC Termination Act"). The definitions in 49 U.S.C. § 13102 are relevant because under the Motor Carrier Act, "motor carrier" and "motor private carrier" have "the same meanings given those terms in section 13102 of this title." 49 U.S.C. § 31501. Therefore, § 305 of the Technical Corrections Act is an amendment to the ICC

Termination Act, which in turn affects the scope of the Motor Carrier Act. It is not, as the Defendants assume, an amendment to the SAFETEA-LU.

The language that Congress used in other sections of the Technical Corrections Act provides additional evidence that section 305 is not an amendment to the SAFETEA-LU. Unlike section 305, many sections of the Technical Corrections Act expressly state that the section is an amendment to the SAFETEA-LU. For example, § 101(a) states "[p]aragraphs (3)(A) and (5) of section 1101(b) of the Safe, Accountable, Flexible, Efficient Transportation Equity Act: A Legacy for Users are amended by striking 'paragraph (1)' each place it appears and inserting 'paragraph (2)'." Another example, § 102 states "[s]ection 1101(a)(18) of the Safe, Accountable, Flexible, Efficient Transportation Equity Act: A Legacy for Users is amended by striking 'Act--' and all that follows through the end of the paragraph and inserting 'Act, $45,000,000 for each of fiscal years 2008 and 2009.'" §§ 101 and 102 are just the first two examples. The phrase "[the SAFETEA-LU] is amended by striking" recurs throughout the Technical Corrections Act. That Congress described many sections of the Technical Corrections Act expressly as amendments to the SAFETEA-LU, but did not for § 305, implies that Congress did not consider § 305 as an amendment to the SAFETEA-LU.

Even assuming, for the sake of argument, that § 305 is an amendment to the SAFETEA-LU, there is still insufficient evidence that Congress clearly and unambiguously intended for section 305 to apply retroactively. Section 306(b), the very next section, includes a limitation on liability for overtime pay "following SAFETEA-LU." It provides that:

> (1) LIMITATION ON LIABILITY.--An employer shall not be liable for a violation of section 7 of the Fair Labor Standards Act of 1938 (29 U.S.C. 207) with respect to a *covered employee* if-- (A) the violation occurred in the 1-year period beginning on August 10, 2005; and (B) as of the date of the violation, the employer did not have actual knowledge that the employer was subject to the requirements of such section with respect to the covered employee.

Pub. L. No. 110-244, 122 Stat. 1572 (emphasis added). The phrase "covered employee" is defined in § 306(c) as an individual:

> (1) who is employed by a motor carrier or motor private carrier (as such terms are defined by section 13102 of title 49, United States Code, as amended by section 305); (2) whose work, in whole or in part, is defined--(A) as that of a driver, driver's helper, loader, or mechanic; and (B) as affecting the safety of operation of motor vehicles weighing 10,000 pounds or less in transportation on public highways in interstate or foreign commerce, except vehicles--(i) designed or used to transport more than 8 passengers (including the driver) for compensation; (ii) designed or used to transport more than 15 passengers (including the driver) and not used to transport passengers for compensation; or (iii) used in transporting material found by the Secretary of Transportation to be hazardous under section 5103 of title 49, United States Code, and transported in a quantity requiring placarding under regulations prescribed by the Secretary under section 5103 of title 49, United States Code; and (3) who performs duties on motor vehicles weighing 10,000 pounds or less.

*Id.* The net effect of subsections (b) and (c) is that an innocent employer has a one-year defense against claims for overtime pay brought by employees whose work involves motor vehicles, but primarily motor vehicles that do not qualify as commercial motor vehicles ("non-commercial motor vehicles").[5]

If the definition of motor carrier in section 305 applies retroactively, then the one-year defense in section 306 is nothing more than surplusage. A legal defense is meaningless unless there is actual underlying liability. In this case, the one-year defense assumes that, as a result of the SAFETEA-LU definition, employers are liable for overtime pay to employees whose work primarily involves non-commercial motor vehicles. But that liability disappears if § 305 applies retroactively. Section 305 restores the original definition of motor carrier and, under that definition, the distinction between non-commercial motor vehicles and commercial motor vehicles is completely immaterial. An employer is not liable for overtime pay to employees whose work involves *any* type of motor vehicle. Section 305 erases the SAFETEA-LU definition of motor carrier and without the SAFETEA-LU definition, there is no need for the one-year defense in § 306. Under these circumstances, applying section 305 retroactively would violate the rule that a statute should be "interpreted so that no

---

[5]"Carey Atlanta is not relying on this one-year grace period at this time for purposes of [these] motion[s]."  (Defs.' Response to Pls.' Surreply, at 8.)

words shall be discarded as meaningless, redundant, or mere surplusage." *United States v. Canals-Jimenez*, 943 F.2d 1284, 1286 (11th Cir. 1991).

Because Congress did not clearly and unambiguously indicate that section 305 of the Technical Corrections Act should apply retroactively, it takes effect on the date of its enactment, June 6, 2008. Section 4142 of the SAFETEA-LU, which provides the amended definition of motor carrier, applies to claims beginning on August 10, 2005 and ending June 5, 2008. This leaves the remaining questions of how the SAFETEA-LU definition affects the motor carrier exemption and whether either party is entitled to partial summary judgment on the motor carrier exemption.

The SAFETEA-LU changed the definition of motor carrier, but otherwise left the motor carrier exemption completely intact. Section 4142 of the SAFETEA-LU amended 49 U.S.C. § 13102 so that motor carrier is defined as "a person providing commercial motor vehicle (as defined in [49 U.S.C.] § 31132) transportation for compensation." In turn, a commercial motor vehicle is defined as:

> [A] self-propelled or towed vehicle used on the highways in interstate commerce to transport passengers or property, if the vehicle--(A) has a gross vehicle weight rating or gross vehicle weight of at least 10,001 pounds, whichever is greater; (B) is designed or used to transport more than 8 passengers (including the driver) for compensation; (C) is used in transporting material found by the Secretary of Transportation to be hazardous under section 5103 of this title [49 U.S.C. § 5103] and transported in a quantity requiring placarding under regulations prescribed by the Secretary under [49 U.S.C.] section 5103.

49 U.S.C. § 31132.

Prior to the SAFETEA-LU, the Department of Labor regulations defining the scope of the motor carrier exemption provided the controlling interpretation in the Eleventh Circuit. *See Baez v. Wells Fargo Armored Serv. Corp.*, 938 F.2d 180, 181 n.4 (11th Cir. 1991) (noting that courts "owe deference" to Department of Labor regulations on this issue). These regulations state that "the exemption of an employee . . . depends both on the class to which his employer belongs and on the class of work involved in the employee's job." 29 C.F.R. § 782.2(a) (emphasis added). The exemption:

> [E]xtends to those classes of employees and only those who: (1) Are employed by carriers whose transportation of passengers or property by *motor vehicle* is subject to [the Secretary of Transportation's] jurisdiction under section 204 of the Motor Carrier Act [49 U.S.C. § 31502], and (2) engage in activities of a character directly affecting the safety operation of motor vehicles in the transportation on the public highways of passengers or property in interstate or foreign commerce within the meaning of the Motor Carrier Act.

*Id.* (citations omitted). Although section 782.2(a) was issued before the SAFETEA-LU, it represents an appropriate baseline for determining the effect of the new definition of motor carrier. The easiest way to see to this effect is simply by replacing "motor vehicle" with "commercial motor vehicle" each time it appears. This "amended" two-part test provides that the exemption:

[E]xtends to those classes of employees and only those who: (1) Are employed by carriers whose transportation of passengers or property by [*commercial*] *motor vehicle* is subject to [the Secretary of Transportation's] jurisdiction under section 204 of the Motor Carrier Act [49 U.S.C. § 31502], and (2) engage in activities of a character directly affecting the safety operation of [*commercial*] *motor vehicles* in the transportation on the public highways of passengers or property in interstate or foreign commerce within the meaning of the Motor Carrier Act.

*Id.* (citations omitted) (emphasis added). This Court adopts the amended two-part test and applies it to this case to decide whether either party is entitled to partial summary judgment on the motor carrier exemption.

The Defendants bear the burden of demonstrating that they meet the two-part test. *Cf. Jeffery*, 64 F.3d at 594. Just as they did for claims before August 10, 2005, the Defendants easily meet the first part of the test. This part of the test looks to the "class to which his employer belongs." 29 C.F.R. § 782.2(a). The Defendants must show that Carey Atlanta is a carrier "whose transportation of passengers or property by *commercial motor vehicle* is subject to [the Secretary of Transportation's] jurisdiction under § 204 of the Motor Carrier Act [49 U.S.C. § 31502]." *Id.* (emphasis added). Evidence that a carrier has a permit or license from the Department of Transportation is sufficient to prove jurisdiction. *See Baez*, 938 F.2d at 182 ("In fact, the permit issued by the [Department of Transportation] indicates that jurisdiction has already been exercised."). The Defendants have provided that evidence. Carey

Atlanta operates multiple commercial motor vehicles and "was issued a *commercial* [motor] vehicle identification number by the United States Department of Transportation license in 2002." (Defs.' Statement Of Material Facts For Which There Is No Genuine Issue To Be Tried ¶ 2) (emphasis added). The "Plaintiffs do not dispute this fact." (Pls.' Response To Defs.' Statement Of Material Facts For Which There Is No Genuine Issue To Be Tried ¶ 2.) Moreover, Carey Atlanta "holds itself out as an interstate motor carrier and advertises interstate services," which is also evidence that a carrier is subject to the Secretary of Transportation's jurisdiction. *Walters*, 2008 WL 2967170, *33.

The second part of the test is more complicated and presents a genuine issue of material fact that precludes partial summary judgment for either party. This part of the test looks to the "class of work involved in the employee's job." 29 C.F.R. § 782.2(a). The Defendants must show that the Plaintiffs belong to a class of employees who directly affect "the safety operation of [*commercial*] *motor vehicles* in the transportation on the public highways of passengers or property in interstate or foreign commerce within the meaning of the Motor Carrier Act." *Id.* (emphasis added). The Defendants have demonstrated that the Plaintiffs affect "safety operation" merely by pointing out that they belong to a class of full-time limousine drivers. The real issue

is whether the Plaintiffs also belong to a class of employees involved in interstate *commercial motor vehicle* transportation.

The Defendants do not have to show that every one of the Plaintiffs had actual involvement in interstate *commercial motor vehicle* transportation. An entire class of employees may be "exempt even though the interstate driving on particular employees was sporadic and occasional, and in practice some drivers would not be called upon for long periods to perform any such work." 29 C.F.R. § 782.2(c)(1) (citing *Morris*, 332 U.S. at 431 (1947)). Instead, to exempt a plaintiff from the overtime pay requirement, the defendant must show that (a) some of its drivers were involved–by evidence of actual or solicited trips–in interstate *commercial motor vehicle* transportation,[6] (b) the involvement with interstate *commercial motor vehicle* transportation was no more than four months prior to the pay period at issue ("four-month rule"), and (c) the plaintiff did make, or could have reasonably have been expected to make, one of those interstate trips. *See Reich*, 33 F.3d at 1156; *Morrison*, 474 F. Supp. 2d at 1310; U.S. Department of Labor, *Fact Sheet #19: The Motor Carrier Exemption under the Fair Labor Standards Act (FLSA)*, July 2008, http://www.dol.gov/esa/whd/regs/compliance/whdfs19.pdf.

---

[6]The phrase "some of its drivers" refers to all of Carey Atlanta's drivers, not just the ones that are Plaintiffs in this case.

A genuine issue of material fact exists because neither side has conclusively shown whether Carey Atlanta's drivers satisfy the four-month rule with regard to *commercial motor vehicles*. The Defendants have presented a chart that indicates that its drivers completed a total of 17 interstate trips in commercial motor vehicles over a three year period, September 11, 2004 to September 11, 2007. (DeLoatch Decl., Ex. F.) Without specific dates for those trips, that evidence is inconclusive. Seventeen trips over 36 months is an average of, at least, one trip every two months. If that average reflects reality, then the Defendants qualify for the motor carrier exemption for the entire period. But an average is just an estimate and it is also entirely possible that all 17 trips occurred during a single month, necessitated by a major event such as a natural disaster, sporting event, or a popular convention. If all the trips did in fact occur during a single month, then the Defendants would qualify for the motor carrier exemption for the next four months, but not any longer.

The Defendants have also presented evidence that during any four month period across the relevant years, Carey Atlanta's drivers made at least one interstate trip in a motor vehicle. (Defs.' Statement Of Material Facts For Which There Is No Genuine Issue To Be Tried ¶ 6.) This evidence is inconclusive because the Defendants admit that Carey Atlanta's fleet includes "a number of sedans which seat five (5) passengers." (*Id.* ¶ 3). Five passenger sedans are considered motor vehicles, but not

*commercial motor vehicles*.  It is, again, possible that all of the interstate trips in commercial motor vehicles occurred during a single month, even if interstate trips in motor vehicles as a whole are spread throughout the year.

The Plaintiffs' evidence is similarly inconclusive.  The Plaintiffs have submitted evidence that "[o]nly five (5) Plaintiffs ever drove across state lines in commercial motor vehicles for a total of six trips."  (Pls.' Response To Defs.' Statement Of Material Facts For Which There Is No Genuine Issue To Be Tried ¶ 7.)  This evidence does not help resolve whether *any* of Carey Atlanta's drivers were involved in interstate commercial motor vehicle transportation within the four-month rule.

Of course, both sides do argue for a different legal test than the one adopted by this Court.  The disagreement is over how the SAFETEA-LU definition affects the motor carrier exemption.  The Defendants argue that the SAFETEA-LU definition only requires that they show that Carey Atlanta has *some* commercial motor vehicles in its fleet.  But if this were true, then a motor carrier could buy one commercial motor vehicle and thereafter all of its drivers would be exempt from overtime pay, no matter how remote or infrequent the possibility of an interstate trip in a commercial motor vehicle.  Rather than looking at the motor carrier's vehicle fleet, the Department of Labor has stated that the second part of the test should focus on the "class of work

involved in the *employee's job*." 29 C.F.R. § 782.2(a) (emphasis added). The character of the driver's activities should be such that interstate trips in commercial motor vehicles are "distributed generally throughout the year and their performance was shared indiscriminately by the drivers and was mingled with the performance of other like driving services." *Morris*, 332 U.S. at 433. Evidence regarding the makeup of Carey Atlanta's vehicle fleet simply does not conclusively determine the character of the Plaintiffs' activities.

The Plaintiffs take the other extreme and argue that the SAFETEA-LU definition requires that the Defendants show that *each* of the Plaintiffs engaged in more than a *de minimus* number of interstate trips in commercial motor vehicles. This is similar to the argument that the Plaintiffs made for claims before August 10, 2005, and so the same problems remain. An entire class of employees may be "exempt even though the interstate driving on particular employees was sporadic and occasional, and in practice some drivers would not be called upon for long periods to perform any such work." 29 C.F.R. § 782.2(c)(1) (citing *Morris*, 332 U.S. at 431). What matters is "the character of the activities *rather than the proportion* of either the employee's time or of his activities." *Morris*, 332 U.S. at 431 (emphasis added). The Defendants, therefore, only have to show that interstate trips in commercial motor vehicles are "distributed generally throughout the year and their performance was shared

indiscriminately by the drivers and was mingled with the performance of other like driving services." *Id.* at 433.

Neither side has conclusively shown whether Carey Atlanta's drivers satisfy the four-month rule with regard to *commercial motor vehicles*. Therefore, neither the Plaintiffs nor the Defendants are entitled to summary judgment on the motor carrier exemption for claims after August 10, 2005.

SO ORDERED, this 1 day of October, 2008.


/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge