IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

NIKOLAI VIDINLIEV
on behalf of themselves and all others
similarly situated, et al.,

   Plaintiffs,

    v.

CAREY INTERNATIONAL, INC.
a Delaware Corporation,

   Defendant.

CIVIL ACTION FILE
NO. 1:07-CV-762-TWT

ORDER

This is a Fair Labor Standards Act case. It is before the Court on the Defendants' Supplemental Motions for Summary Judgment [Docs. 151, 153.] For the reasons set forth below, the Defendants' Motions are GRANTED.

I. Background

The Plaintiffs are current and former limousine drivers for the Defendants Executive Limousine Transportation, Inc., and Aaron's Limousine Service, Inc. (collectively "Carey Atlanta"). Carey Atlanta provides chauffeured transportation out of Atlanta, Georgia, pursuant to a franchise agreement with the Defendant Carey International, Inc. Carey International advertises itself as "the world's premier

chauffeured services company, offering the widest range of chauffeured ground transportation services for personal travel, business travel, road shows, meetings and events, private aviation, luxury hotels and more." (Second Am. Compl. ¶ 16.) While working for Carey Atlanta, the Plaintiffs often worked more forty hours per workweek but were not paid time and one-half for overtime. The Plaintiffs say that by failing to pay overtime, the Defendants violated the Fair Labor Standards Act. 29 U.S.C. § 207(a)(1). In response, the Defendants rely on the motor carrier exemption, which provides that the overtime pay requirement does not apply to "any employee with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours of service pursuant to the provisions of section 204 of the Motor Carrier Act [of] 1935." 29 U.S.C. § 213(b)(1).

In a previous order, the Court granted summary judgment to the Defendants on the Plaintiffs' claims arising before August 10, 2005, but denied summary judgment to the Defendants on the Plaintiffs' claims arising on and after August 10, 2005. [Doc. 145]; Vidinliev v. Carey Int'l, Inc., 581 F. Supp. 2d 1281, 1287-88 (N.D. Ga. 2008). On August 10, 2005, Congress passed the Safe, Accountable, Flexible, Efficient Transportation Equity Act: A Legacy for Users (SAFETEA-LU), which changed the scope of the motor carrier exemption. Pub. L. No. 109-59, 119 Stat. 1144 (2005). The Defendants' evidence at the time did not address the changes made by

the SAFETEA-LU, and so the Defendants were only entitled to summary judgment on claims arising before August 10, 2005. The Defendants now present additional evidence and move for summary judgment on the Plaintiffs' claims arising on and after August 10, 2005.

## II. Summary Judgment Standard

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The court should view the evidence and any inferences that may be drawn in the light most favorable to the nonmovant. Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59 (1970). The party seeking summary judgment must first identify grounds that show the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). The burden then shifts to the nonmovant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact does exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986).

## III. Discussion

The Court has extensively discussed the changes to the motor carrier exemption made by the SAFETEA-LU in its previous summary judgment order. Vidinliev, 581 F. Supp. 2d at 1288. The Court will assume familiarity with that order. The only

issue remaining after that order is whether the Defendants can "show that (a) some of [their] drivers were involved–by evidence of actual or solicited trips–in interstate commercial motor vehicle transportation, (b) the involvement with interstate commercial motor vehicle transportation was no more than four months prior to the pay period at issue ('four month rule'), and (c) the plaintiff did make, or could have reasonably been expected to make, one of those interstate trips." Id. at 1293 (emphasis omitted).

The Defendants have now made the required showing of interstate commercial motor vehicle transportation. Carey Atlanta's drivers made thirty interstate trips in commercial vehicles from August 10, 2005 to May 2, 2008. (DeLoatch Second Decl. ¶ 2.) During any four-month period from August 10, 2005 to May 2, 2008, Carey Atlanta's drivers made at least one interstate trip in a commercial motor vehicle. (Id.) Even though many of the Plaintiffs did not make one of those interstate trips, any of them could have reasonably been expected to do so. "[A]ny driver, including the Plaintiffs, could have been called upon to drive a commercial motor vehicle . . . across state lines or otherwise, at any time." (DeLoatch Decl. ¶ 11.) And the Plaintiffs admit that drivers "are required to follow Carey International's assignment procedures, and specifically are not allowed to reject rides assigned by the Defendants' dispatch." (Second Am. Compl. ¶ 22.) "The drivers were completely dependent upon the

Defendants for the assignment of work . . . ." (Id. ¶ 32.) The Plaintiffs are "bound by the admissions in [their] pleadings." Best Canvas Prods. & Supplies, Inc. v. Ploof Truck Lines, Inc., 713 F.2d 618, 621 (11th Cir. 1983).

The Plaintiffs say that they could not have reasonably been expected to make an interstate trip in a commercial motor vehicle. First, the Plaintiffs say that some of them did not have a Commercial Drivers License. But those Plaintiffs only needed a Commercial Drivers License to drive Carey Atlanta's twenty-eight and fifty-five passenger buses. See 49 C.F.R. § 383.91. They could still have reasonably been expected to drive Carey Atlanta's eleven passenger vans or stretch limousines, which are also considered commercial motor vehicles. See 49 U.S.C. § 31132; 49 C.F.R. § 383.91; (DeLoatch Second Decl., Exs. A-C).

Second, the Plaintiffs say that some of them did not have a chauffeur's permit to drive Carey Atlanta's stretch limousines. See O.C.G.A. § 46-7-85.9. But those Plaintiffs only needed a chauffer's permit to drive Carey Atlanta's stretch limousines. See O.C.G.A. § 46-7-85.1(4). They could still have reasonably been expected to drive Carey Atlanta's eleven passenger vans, which are also considered commercial motor vehicles. See 49 U.S.C. § 31132; 49 C.F.R. § 383.91; (DeLoatch Second Decl., Exs. A-C). Moreover, not having a chauffeur's permit did not affect whether the Plaintiffs actually drove stretch limousines. "I did not have a Chauffeur Permit or Commercial

Driver's License during the time I drove stretch limousines for Carey from January 7, 2006 through 2007." (Anthony Artis Second Decl. ¶ 3); see (DeLoatch Second Decl. ¶ 9.) The Defendants say that the reason the Plaintiffs could drive stretch limousines without a permit is that only the limousine carrier is subject to penalties, not the driver. See O.C.G.A. § 46-7-85.7; Ga. Comp. R. & Regs. 375-5-5-.05.

Third, the Plaintiffs say that some of them had agreements with Carey Atlanta not to be assigned interstate trips in commercial motor vehicles. For example, Plaintiff Ivan Manasiev says that he told Carey Atlanta "that I prefer not to drive out of state." (Manasiev Second Decl. ¶ 6.) But a preference is not the same as an agreement. Compare Chao v. First Class Coach Co., 214 F. Supp. 2d 1263, 1275-76 (M.D. Fla. 2001) (summary judgment even though defendant "did try to honor the requests of a few employees that they be assigned only to local routes"), and Elliot v. Dave Ernstes & Sons Trucking, No. 1:05-cv-1981, 2006 WL 2849705, at *6 (S.D. Ind. Oct. 3, 2006) (same), with Walters v. American Coach Lines of Miami, Inc., 569 F. Supp. 2d 1270, 1294 (S.D. Fla. 2008) (no summary judgment where drivers were "not required to perform [certain] assignments and are free to turn them down."). The Plaintiffs "are required to follow Carey International's assignment procedures, and specifically are not allowed to reject rides assigned by the Defendants' dispatch." (Second Am. Compl. ¶ 22.) Moreover, Carey Atlanta's dispatch will not always know

the exact details of the trip, and so a driver may end up driving out of state because of a client's request. (DeLoatch Third Decl. ¶ 5); (DeLoatch Second Decl., Ex. A, at 19) (listing pickup as Atlanta and dropoff "as directed"). That is the nature of chauffeured transportation. Cf. Morris v. McComb, 332 U.S. 422, 434 (1947) ("The net result is a practical situation such as may confront any common carrier engaged in a general cartage business, and who is prepared and offering to serve the normal transportation demands of the shipping public in an industrial metropolitan center.").

There are other Plaintiffs that say they had agreements with Carey Atlanta. But, like Ivan Manasiev, they also expressed nothing more than their preferences, which Carey Atlanta did not always honor. (McKeal Decl. ¶ 3) ("I drove the stretch limousine exclusively, except on occasion I drove the minibus."); (Simpson First Decl. ¶ 3) ("I have driven the Lincoln Town Car exclusively, with the exception of one or two trips in the van."). It may seem odd that all the Plaintiffs are subject to the motor carrier exemption, even though the vast majority of their time was spent making intrastate trips in non-commercial motor vehicles. But the motor carrier exemption is based on the jurisdiction of the Department of Transportation, which is in turn based on safety in interstate transportation. "As a practical matter it is not the amount of time an employee spends in work affecting [interstate] safety, rather it is what he may do in the time thus spent, whether it be large or small, that determines the effect

on safety. Ten minutes of driving by an unqualified driver could do more harm on the highway than a month of driving by a qualified one." Starrett v. Bruce, 391 F.2d 320, 323 (10th Cir. 1968); see Morris, 332 U.S. at 434. Therefore, the Defendants have demonstrated that there is no genuine issue of material fact as to the motor carrier exemption, and the Defendants are entitled to summary judgment on the Plaintiffs' claims arising on and after August 10, 2005.

## IV. Conclusion

For the reasons set forth above, the Defendants' Supplemental Motions for Summary Judgment [Docs. 151, 153] are GRANTED.

SO ORDERED, this 31 day of August, 2009.

/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge